The opinion of the court was delivered by
Watkins, J.
This is a petitory action of ordinary form, seeking the recovery of two tracts of land described in the petition, wherein the defendant denies and disavows the title of the plaintiff,'~and in the alternative that the judgment goes against him, he prays for like judgment against his respective warrantors who are cited to defend this action.
In the court below there was judgment in favor of the defendant and plaintiff has appealed, and in this court he appears and pleads, *1623 in aid of his title, the prescription acquirendi causa of ten and thirty years. The representation of the plaintiff is that he acquired title to a portion of the lands in controversy on the 1st of February, 1893, from W. H. Howcott and Walter R. Brashear, and another portion on the 9th of March, 1893, from Walter R. Brashear alone.
That in the former he acquired the following lands, to-wit:
Lots 1, 2, 3 and 5 of S. 12, T. 13, R. 12.
S. E. 1-4 of S, 1, T. 13, R. 12.
Lots 1, 2, 3, 4, 5 and 6 (W. 1-2), S. 24, T. 13, R. 12.
N. 1-2 of S. 2, T. 13, R. 12.
N. E. 1-4 of S. 3, T. 13, R. 12.
Lots 1, 2, 3 and4 of S. 13, T. 13, R. 12.
Lot 1 and S. E. 1-4 S. 25, T. 14, R. 12.
N. E. 1-4 of S. 36, T. 13, R. 12.
Lots 5 and 6 of S. 36, T. 13, R. 12.
(All land in T. 13, R. 12 E.)
Lots 1 and 3 of S. 25, T. 14, R. 12.
N. E. 1-4 and E. 1-2 of N. W. 1-4, S. 35, T. 14 S., R. 13.
Lot 4, S. 13, T. 15, R. 13.
Fractional S. 11, T. 15, R. 13.
N. W. 1-4 of S. W. 1-4, S. 13, T. 15, R. 13.
Lot 1, S. 14, T. 15, R. 13.
Lot 4, S. 23, T. 15 S., R. 13 E.
Oontaining 3600 55-100 acres.
That in the latter he acquired the following lands, to-wit:
Lot 4, S. 26, T. 14 S., R. 13 E.
W. 1-2 of N. W. 1-4 and N. W. 1-4 of S. W. 1-4, S. 1, T. 15, R. 13.
Lots 4, 5, 6 and 8, S. 2, T. 15, R. 13.
Lot 6 of S. 10, T. 15, R. 13.
Lot 1 of S. 15, T. 15, R. 13.
Lot 1 of S. 22, T. 15, R. 13.
All in T. 15 S., R. 13 E., containing 863 78-100 acres.
It is alleged in the petition that the whole of said lands are situated in the parish of Assumption, wherein the titles are duly recorded; and that the defendant, Gustave Drew, notwithstanding the title thereto was in Walter Brashear and William Howcott, pretending to own the aforesaid lands, entered thereon and cut down and carried away a large number of cypress trees, fully worth ten thousand dollars, and is now illegally detaining and holding posses *1624 sion cf same and refuses to give them up, although he holds no just title to said property.
Plaintiff’s prayer is that his title to said lands be recognized, that he be decreed the owner thereof and placed in possession of same; and that he have and recover from the defendant the sum of ten thousand dollars as the value of timber removed, alleging himself to be duly subrogated to all the rights of his vendor thereto.
In his answer the defendant avers that he is the bona fide owner, with titles from the widow and heirs of Henry E. Lawrence, deceased, bearing dates, respectively, June 24, 1889, May 26, 1890, August 28, 1890, and December 10, 1892.
That in the first he acquired the following lands, viz.:
Lots 5 and 6 in S. 2, T. 15, R. 13 — 164 acres.
Lot 6 in S. 10, T. 15, R. 13 — 62 acres.
Lot 1 in S. 15, T. 15, R. 13 — 140 acres.
All in township 15, range 13, containing 240 acres.
That in the second he acquired the following lands, viz.:
Lots 5 and 6 in S. 4, T. 13, R. 12.
W. 1-2 of S. 2, T. 13, R. 12.
N. E. 1-4 of S. 3, T. 13, R. 12.
E. 1-2 of S. E. 1-4 of S. 3, T. 13, R. 12.
Lots 1 and 2 of S. 15, T. 13. R. 12.
B. 1-2 of S. E. 1-4 of S. 15, T. 15, R. 12.
All of township 13 of range 12 east, containing 1077.6 acres.
That in the third he acquired the following lands, viz.:
W. 1-2 of N. E. 1-4 of S. 12, T. 13, R. 12 E.
N. E. 1-4 of S. 12, T. 13, R. 12 E.
Lot 3 of S. 12, T. 13, R. 12 E.
Lots 3 and 4 in S. 13, T. 13, R. 12 E.
Lot's 4 and 5 in S. 12, T. 13, R. 12 E.
Lot 1 in S. 13, T. 13, R. 12 E.
Lot 2 in S. 13, T. 13, R. 12 E.
E. 1-2 of S. E. 1-4 of S. 1, T. 13, R. 12 E.
W. 1-4 of S. E. 1-4 of S. 1, T. 13, R. 12 E.
Lot 3 in S. 15, T. 13, R. 12 E.
Lot 4 in S. 23, T. 15 of R. 13 E.
Lot 1 in S. 14, T. 15, R. 13 E.
Containing in all 1380.47 acres.
*1625 That in the fourth he acquired the following land, viz.:
The N. E. 1-4 of S. 36.
E. 1-2 of S. 25, T. 13, R. 12 E., containing 444.60 acres.
It is further averred that all of said lands are situated in the parish of Assumption, that he is in possession thereof, and that his titles were duly recorded at dates of acquisition. ' '
That the aforesaid lands belonged to the matrimonial community existing between Henry E. Lawrence and his wife at the time of his death, and thereafter became property owned by said widow and heirs in indivisión, said property having been acquired by said Henry E. from Effingham Lawrence, Jr., his brother, by an actof salebearing date April 17, 1848.
That if any of said lands were ever sold and transferred by said Henry E. Lawrence to Robert B. Brashear, said sale or transfer was judicially annulled and set aside, and the property restored to Henry E. Lawrence by a judgment of court rendered in a suit entitled Henry B. Lawrence vs. Robert B. Brashear, in the parish of St. Mary. That he and his authors in title have always been in the quiet, legal and undisturbed possession of the aforesaid property, as owners under bona fide titles translative ,of property for more than thirty years, and he pleads the prescription often, twenty and thirty years in bar of plaintiff’s demands.
• The answer then specially avers and represents that if Walter Brashear, the only surviving heir of Robert Brashear and his wife, has disposed of any of said lands in favor of the plaintiff, pretending to be the owner thereof, by inheritance from his father, he has done so without any legal right; and that if said Walter Brashear ever had any title therein, he and his vendees are estopped from setting up same against him, because of an agreement and compromise that was made between him and defendant’s warrantors and vendors, bearing date January 18, 1881, and duly recorded, wherein Walter Brashear “relinquished in favor of the defendant’s authors all their rights of heirship whatsoever in and to all property, and all demands of any and every nature and character,* which he might have or could have, for the consideration therein stated; and that if any title whatever rested in Walter Brashear, or his mother (in said property) it springs from .their rights as heirs and survivors of Robert B. Brashear, deceased, and the aforesaid act operates as a bar and an estoppel, which is herein pleaded specially.”
*1626 The further averment of the answer is that the demand of the plaintiff for damages is frivolous and unfounded; and, in any event, is barred by the prescription of one year; and he especially disclaims the ownership of any lands other than those set out in his answer, and to that extent prays that the plaintiff’s demands be rejected.
He cites his vendors in warranty, and prays for such judgment in his favor and against them as the plaintiff may obtain against him.
The warrantors appear and answer that the plaintiff has no title to the lands sued for, for the reason that Walter Brashear, the author of defendant’s title and that of Howeott was without right, title or-interest of any kind whatever in the lands sued for, because the only title the said Brashear ever had therein was that which he may have inherited from his father, Robert B. Brashear, and that-he, by an authentic act of January 18, 1881, renounced, released, acquitted, and assigned to them any and all of his said supposed right, title and interest to them, and divested himself completely thereof. They further represent that, at and anterior to the respective dates on which they conveyed said lands to the defendant, they were the true and lawful owners of the said lands. That they were acquired by Henry E. Lawrence, the deceased husband, and father of the appearers, from Effingham Lawrence, Jr., on the 17th of April, 1848; and that neither Henry E. Lawrence nor they have ever parted with, or been divested of their oAnership of same. That if any title to any portion of said lands was ever passed from Henry E. Lawrence to Robert B. Brashear, the same is null and void, and that the nullity thereof has been judicially pronounced in a suit between said parties. That, joining their own possession to that of Henry E. Lawrence and Effingham Lawrence, Jr., it has continued for more than thirty years, and has been lawful, peaceable, continuous, public, unequivocal, actual and corporeal, in the quality of owners of said property under titles translative of property and in good faith; and thereupon they plead the prescription of ten, twenty and thirty years.
They pray that the plaintiff’s demands be rejected, and in the alternative that judgment should go against them, they allege themselves entitled to be reimbursed the amounts they have expended for taxes on the property, and that the plaintiff be restrained from taking possession until same are fully reimbursed to them.
*1627 The plaintiff prints to an agreement which was entered into on the 22d of May, 1845, between James Dick, Henry E. Lawrence and Robert B. Brashear, relative to the entry of public lands from the United States as the source of his titles to property in suit, the substance of which was that Dick was to furnish the money, and Lawrence and Brashear were to make the selections and to secure the patents therefor, and the titles were to vest in the parties, respectively, in the proportions of one-half in Dick and one-fourth each in Brashear and Lawrence.
He claims that, in pursuance of said agreement, a large amount of lands was entered, principally in the name of Dick, but some in the name of Effingham Lawrence, Jr., supposedly for convenience.
That in 1849 Dick died leaving a last will, whereby all of his property was bequeathed to Mrs. Widow Sarah D. Partee, constituting her his univeral legatee; and that said will was duly probated and the legatee placed in possession.
That subsequently some trouble arose between, the parties to the agreement of 1845, which was settled by the execution of the following documents, namely:
1. An act of sale from H. E. Lawrence to Mrs. Sarah D. Partee, of date February 14, 1850, of all the lands entered in the name of Effingham Lawrence, Jr., same having been previously conveyed from Effingham Lawrence, Jr., to Henry E. Lawrence on the 17th of April, 1848.
2. An act of sale from Mrs. Sarah D. Partee to Robert B. Brashear of “all the right, title and interest, property, claim and demand of every kind and nature whatsoever which she now has, or]may¿have or possess, in and to the following described tracts of land,” etc.
That in this manner the title became vested in Robert B. Brashear, and at his death it was inherited by Walter R. Brashear,¡¡his only child and heir, who conveyed said lands to W. H. Howcott on the 19th of January. 1898, and he in turn conveyed same to the plaintiff by acts of sale February 1, 1898, and March, 1898.
Consequently, the two acts of sale referred to — the one'from Lawrence to Partee and that from Partee to Brashear — are of vital importance in determining the title in controversy primarily; "for it is evident that, originally, H. E. Lawrence owned one-fourth interest in all the lands that were entered in pursuance of the agreement of 1845, Brashear one-fourth and Mrs. Partee ore-half, in virtue of her legacy from Dick.
*1628 There is no claim made that Brashear at any time disposed of his share in the property to any one, and he must therefore have retained same until his death; and as there is only one deed referred to whereby H. E. Lawrence conveyed any property to Mrs. Partee as the heir of Dick, it must be examined and considered for the purpose of ascertaining what property was conveyed, and whether there remained any interest in the common property in Henry E. Lawrence which passed through his widow and heirs to the defendant.
An examination of the deed first named discloses that Henry E. Lawrence only conveyed, in terms, to Mrs. Sarah D. Partee “ all the right, title and interest, property, claim and demand of every kind and nature whatsoever which he acquired from Effingham Lawrence, Jr., by the transfer above mentioned, in and to the following lands,” describing them, and expressly limiting his contract of warranty “ against all lawful claims and demands whatsoever arising from his own acts and against none other,” etc.
This act of sale is authentic in form, and was duly signed by H. E. Lawrence and Mrs. Sarah D. Partee in the presence of notary and witnesses.
Claim is made that the recitals of this act disclose that a previous settlement had been made between all parties to the agreement of 1845, but the only recital that the act contains which in any manner indicates such previous settlement is the following, to-wit:
“That after satisfying the claims of said Henry E. Lawrence and Robert B. Brashear, and in all other respects and matters complying with and fulfilling the terms and conditions of the said agreement, sundry tracts of land fully described in the patents hereinafter referred to fell to the share of James Dick, who by his last will and testament * * * bequeathed the same to the said Mrs. Partee, his niece.
“ Now therefore in consideration of the premises, and in order to carry into effect the agreement aforesaid, the said Lawrence moreover declared that he does by these presents grant, convey, * * * unto Mrs. Partee, * * * all the rights, title and interest * * * which he acquired from Effingham Lawrence, Jr., by the transfer above mentioned in and to the following lands,” etc.
But that recital does not state in what manner the claims of Henry E. Lawrence had been satisfied, whether by partition of the common *1629 property or otherwise. Nor does it state in what manner the terms and conditions of the agreement of 1845 had been complied with and fulfilled. Nor does this act purport to describe the sundry tracts of land that fell to the share of Dick. But in so far as such purported settlement is concerned we are left entirely in the dark. As a title this instrument conveys nothing except the lands that were entered in the name of Effingham Lawrence, Jr., and for those there is no consideration expressed in the act. It is a fact that is worthy of observation, that Robert B. Brashear was not a party to that act, and therefore his undivided interest in those lands did not pass to Mrs. Partee thereby.
Consulting the act of sale from Mrs. Sarah D. Partee to Robert B. Brashear, a few years later in date than the act of sale from H. E. Lawrence to her, which makes reference to the previous conveyances, we find the recitals quoted from the former incorporated therein, and to them is subjoined the further statement, viz.:
“And whereas she, the said Mrs. Partee, is desirous of bringing the said agreement to a close so far as she is or may be interested or concerned, and of terminating and disposing of her interest in the said lands as acquired by her as aforesaid:
“ Now, therefore, for the consideration and on the terms and conditions hereinafter expressed, the said Mrs. Partee moreover declared that she does by these presents grant, bargain and sell * * * unto the said Robert B. Brashear * * * all the right, title, interest, property, claim .and demand of every kind and nature whatsoever, which she has or may have and possess in and to the following described tracts of land,” etc. (Our italics.)
To this act Henry E. Lawrence was not a party, and by its terms it conveyed to Brashear only the interest or share of Mrs. Partee, leaving that in the same indeterminate situation, in respect to amount or quantity, as before. But in one respect it is certain and definite, and that is in respect to the alleged settlement between the parties to the agreement of 1845; but it shows that it was at that date — March 25, 1856 — incomplete, for it states that the vendor, Mrs. Partee, was “ desirous of bringing said agreement lo a close, so far as she is or may be interested or concerned.” (Our italics.)
It is, therefore, quite evident that these two instruments do not import — as plaintiff’s counsel insist — a transfer from Henry E. Lawrence to Mrs. Partee of all the title and interest of the former in the *1630 lands that were acquired by the parties under the agreement of 1845. It is equally evident that they do not evidence a full and final settlement of the affairs of the joint owners, or a partition and division of the common property, by licitation or otherwise.
Consequently, our conclusion is to give same effect in so far only as the lands that were entered in the name of Effingham Lawrence, Jr., are concerned, as that is the extent to which she acquired title from Henry B. Lawrence.
The plaintiff’s counsel has furnished us several schedules of the lands in controversy, which are appended to their brief, and we reproduce some of them for the purpose of making some comparisons as a means of better presenting our views in regard to the titles of the parties respectively.
The following is a tabulated statement of all the lands that were entered under the agreement of May 22, 1845, in the names of James Dick and Effingham Lawrence, Jr., respectively, viz.:

Aggregating over 4500 acres.
*1631 The subjoined tabulated statement shows the lands that are claimed in the petition and those claimed in the answer respectively, viz.:

The following tabulated statement shows the lands that Henry E. Lawrence conveyed to Mrs. Sarah D. Partee, and indicates those that are contained in the petition and answer, and also those that are contained in the petition and not included in the answer:

We mark with X all lands claimed in petition and answer. We mark wiih 0 all lands claimed in the petition and not in answer.
The following tabulated statement shows the various lands that Mrs. Partee conveyed to R. B. Brashear, viz.:

*1632

The following tabulated statement shows the lands Walter R. Brashear and W. H. Howcott con veyed to the plaintiff, viz.

Instituting a comparison between these several statements, we are enabled to trace the titles of the parties, and from the comparison find the following facts, viz.:
1. The lands which are claimed in defendant’s answer, and found in the tabulated statement of lands that are entered in pursuance of the agreement of 1845, are the following, viz.:

*1633

(c) W. 1-2 of N. E. 1-4, Sec. 12, T. 13, R. 12 — 80 acres, is omitted, possibly by mistake or accident.
2. In the foregoing list (a) none are included or covered by the deed from Henry E. Lawrence to Mrs. Sarah D. Partee; but all those contained in list b were conveyed, thus confirming, by the comparison of the tabulated statements, the truthfulness of the recital of the act of sale.
It is therefore evident that the only conflict there is between the titles — on the face thereof — of the plaintiff and defendant, is in respect to the five hundred and twenty-eight acres that were entered in the name of Effingham Lawrence, Jr., and by him conveyed to H. E. Law - rence, and by Lawrence to Mrs. Sarah D. Partee; and as a necessary consequence the plaintiff is obliged to look elsewhere for proof in support of his claim to the remaining 2219.78 acres, which are covered by the deeds of the defendant from the widow and heirs of H. E. Lawrence. Though it is a fact that is apparent on the face of the deeds that the widow and heirs of H. E. Lawrence conveyed to defendant, Gustave Drew, on June 24, 1889, the following, to-wit:
Lots 5 and 6, S. 2, T. 15, R. 13, 164 acres.
Lot 6, S. 10, T. 15, R. 13, 89.94 acres.
Lot 1, S 15, T. 15, R. 13, 82.94 acres.
And on August 23, 1890, the following, to-wit:
Lot 1, S. 14, T. 15, R. 13, 82.94 acres.
Lot 4, S. 23, T. 15, R. 13, 82.56 acres, which places him in the position of possessor under title, in competition with the plaintiff, who claims to have derived a previous title thereto from a common author, H. E. Lawrence, while living — those two deeds covering all the lands which are embraced in the defendant’s answer, and designated as those entered in the name of Effingham Lawrence, Jr.
3. It is shown that Mrs. Partee conveyed to R. B. Brashear all the lands described in tabulated statement a, supra, save and except the following, viz.:

*1634

and for these lands she gave to R. B. Brashear no title.
4. It is shown that Walter Brashear and W. H. Howeott conveyed to the plaintiff all the lands embraced in tabulated statement a, supra> but did not convey-—

in statement b, hence we have the following propositions established by the deeds, viz.:
1. That defendant claims in his answer two thousand seven hundred and forty-seven and seventy-eight one-hundredths acres of land that are embraced in the quantity that was entered under the agreement of 1845; and that of these two thousand two hundred and nineteen and seventy-eight one-hundredths acres were entered in the name of Dick, and five hundred and twenty-eight acres were entered in the name of Effingham Lawrence, Jr.
2. That none of those entered in the name of Dick were conveyed by H. E. Lawrence to Mrs. Sarah D. Partee, but all of those entered in the name of Effingham Lawrence were conveyed.
3. That the widow and heirs of H. E. Lawrence conveyed to the defendant title to the whole of the latter, as well as a large portion of the former, the two parties being thus assigned the position of tracing title to this portion of the land through Henry E. Lawrence as a common author.
4. That there were seven hundred and twenty-five and fifty-six one-hundredths acres of the land that were entered in the name of Dick, which Mrs. Partee didnot convey to R. B. Brashear; and of those that were conveyed to Brashear, there were three hundred and sixty-three and six one-hundredths that were entered in the name of E. Lawrence, that were not conveyed by Walter R. Brashear and W. H. Howeott to the plaintiff.
Therefore, as before stated, we will omit from present consideration the claim of the plaintiff to the lands entered in the name of Dick, which he derived through Howeott, Walter Brashear and Mrs. Partee, as same is without other foundation than that derived from *1635 the agreement of 1845, and Mrs. Partee’s legacy from James Dick; and will restrict consideration of same, as derived from lands entered in the name of Effingham Lawrence, which was traced through H. E. Lawrence, Mrs. Partee, Walter Brashear and Howcott, to 528 acres, less 368.06 — 164.94—same being the net balance in the posses-of defendant, that is subject to controversy.
On the 28th of May, 1849, Henry E. Lawrence executed an act of sale to Robert B. Brashear for a large amount of land therein described, and among them are those particularly designated as all that were “ purchased by the said Lawrence from Effingham Lawrence, Jr., by an act passed before the said Ricardo, notary, on the 18th day of April, 1848;” and also, “all the rights, title and interest, being the one undivided third in and to the lands entered in the name of N. and J. Dick and Effingham Lawrence, Jr., all situated in this State, and containing two thousand acres, more or less.”
The price of this sale was sixteen thousand five hundred dollars, on terms of credit, secured by mortgage; and it was accompanied with the renunciation of the wife of the vendor.
But it also appears that, subsequently, Henry E. Lawrence instituted an action of nullity against Robert B. Brashear, which resulted in a judgment on the 3d of April, 1858, annulling the aforesaid sale of the 28th of May, 1849, and wherein it is, among other things, decreed “that all the property described in said act, and transferred and conveyed therein, be and same is hereby restored to the possession of the said plaintiff, under the title under which he holds the same, free from all mortgages and incumbrances,” etc.
The object as well as the legal effect of that judgment was to replace the parties in the same relative positions they occupied at the time the sale was originally made.
The important features of these transactions are:
1. That the two parties engaged therein were H. E. Lawrence and Robert B. Brashear, both of whom were parties to the original agreement of 1845.
2. That Dick, the third party, died in 1849, nearly ten years prior to said judgment, leaving his property to Mrs. Partee as his universal legatee, who, on the 25th of March, 1856, conveyed her entire interest to R. B. Brashear during the pendency of that suit and more than two years prior to the rendition of judgment.
It is quite evident that Robert B. Brashear could not acquire any *1636 right to or interest in the common property from Mrs. Partee during the pendency of that suit, quoad the undivided interest of H. E. Lawrence, and that the effect of any mere paper title from Mrs. Partee to R. B. Brashear must have been subordinated to said judgment and controlled thereby. Its effect was to utterly defeat the attempted alienation by Mrs. Partee to R. B. Brashear of the interest of H. E. Lawrence in lands entered in the name of Dick at least.
On the 26th of July, 1860, only a little more than a year subsequent to said judgment annulling said sale, Henry B. Lawrence instituted suit against the legal representatives of R. B. Brashear for a partition of all the properties in which they had interests jointly, growing out of the agreement of 1845, aggregating about five thousand six hundred and seventy-six acres, specifically describing all the dealings and operations of the parties thereunder and all the acts and transactions of the parties in respect to said land, including Mrs. Partee and her conveyance to Brashear and the judgment annulling same.
Henry E. Lawrence died, leaving this suit pending at his death, and a partition was thereby held in abeyance. Affairs remained in this situation until the 18th of January, 1881, when Walter R. Bra-shear, as sole surviving heir of R. B. Brashear, entered into a compromise settlement with the widow and heirs of H. E. Lawrence, the purport and effect of which is: 1. That said widow and heirs conveyed to Walter R. Brashear full title to certain designated property, or, in other words, they recognized his ownership, by inheritance from his father, of certain described properties. 2. W. R. Brashear, in consideration therefor, gave full acquittance to said transferees of every kind and species of claim and demand which he had or may have urged against them, or anyone of them, for any cause whatever, “particularly such demands and claims as he may have (had) against them, or any one of them, by virtue of his being the son and heir of R. B. Brashear,” etc.
This appears to be the manner in which the sole heir of R. B. Brashear and the surviving widow and heirs of H. E. Lawrence chose to adjust their differences and settle their disputed rights and interests, and which had remained so long suspended by the pending partition suit.
It did not purport to be a sale, but a settlement. It had the effect *1637 of recognizing the undivided share or interest of each,and it recognized the title of Walter R. Brashear to certain specified lands as heir of his father, and relinquished or abandoned any further or other right in his favor as heir.
The suit for the annulment of the former title of H. E. Lawrence to R. B. Brashear was the necessary precursor of the suit for partition, and the compromise settlement terminated the partition suit and adjusted their differences, and is binding on all the parties thereto and has the authority of a thing adjudged. We are satisfied that it operates as a complete bar and estoppel as against Walter R. Brashear and those claiming under him, and prevents their assertion of title derived from R. B. Brashear against the widow and heirs of H. E. Lawrence. And while this estoppel may not have effect as regards Mrs. Partee, as she is not a party to the suit nor to the act of compromise, yet it does affect the assertion of any title that Walter R. Brashear derived by inheritance from his father, although same may have been derived from Mrs. Partee, And our conclusion is that the defendant, possessing a title from the widow and heirs of H. E. Lawrence, who possessed as owners under the tranaction and compromise of 1881, can not be divested by the transferees of the heir of R. B. Brashear.
We have consequently reached the same conclusion at which the judge below arrived.
With regard to the plea of prescription that the plaintiff filed in this court, nothing was said in either argument or brief, and we have not discovered anything on the record to sustain it.
On the contrary, the judgment of the court annulling the title made by H. E. Lawrence to R. B. Brashear on the 3d of April, 1858, decreed the plaintiff to be entitled to be placed in possession of all the lands conveyed, including all the lands entered under the agreement of 1845. And the partition suit of H. E. Lawrence vs. R. B. Brashear’s legal representatives in 1860, proceeds upon the hypothesis that the plaintiff was in possession and that fact is not denied by the defendants therein. •
And by the terms of the act of compromise of the 18th of January, 1881, Walter R. Brashear abandoned and relinquished in favor of the widow and heirs of H. E. Lawrence (the vendors of defendant) , all the rights and interests he had derived from the succession •of his father — thus renouncing, at least, his possession as owner in their favor.
*1638 On this statement there is no basis for the prescription the plaintiff urges, predicated, as it must be, on rights derived from R. B. Brashear and Walter R. Brashear, his heir. In so far as the defendant’s pleas of prescription are concerned, no consideration is necessary, as we have found that he possessed a title as owner that did not require the help of prescription.
Judgment affirmed.